**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARTSRIVER, INC., | No. C 09-811 CW |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 201) |
| v. | |
| SHOPZILLA, INC.; YAHOO! INC.; EBAY INC.; AND MICROSOFT CORPORATION, | |
| Defendants. | |
| SHOPZILLA, INC.; YAHOO! INC.; EBAY INC.; AND MICROSOFT CORPORATION, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| PARTSRIVER, INC., | |
| Counterclaim-Defendant. | |

Defendants Shopzilla, Inc., Yahoo! Inc., eBay Inc. and Microsoft Corporation move for summary judgment on Plaintiff PartsRiver, Inc.'s patent law claims against them, based on non-infringement and invalidity due to the on-sale bar. Plaintiff opposes the motion. The matter was heard on July 16, 2009. Having considered all of the papers filed by the parties and oral argument

on the motion, the Court GRANTS the motion for summary judgment.

BACKGROUND

Plaintiff alleges Defendants[1] infringe its patent, U.S. Patent No. 6,275,821 (the '821 patent). Defs.' Ex. A. The '821 patent, entitled "Method and System for Executing a Guided Parametric Search," is generally directed at a system and method for assisting a user in "identifying a single item from a family of items." Defs.' Ex. A, Abstract. Sherif Danish and Kris Kimbrough are the inventors of the '821 patent, which was assigned to Saqqara Systems, Inc. The '821 patent issued on August 14, 2001, and is the third in a series of patents that all claim priority to an application filed on October 14, 1994. Defs.' Exs. A-C. The "critical date" for the on-sale bar under 35 U.S.C. § 102(b) is October 14, 1993, one year before the patent application was filed.

Plaintiff sells software products and services and has offices in Fremont, California. In April, 2006, Plaintiff acquired the assets of Saqqara Systems including the '821 patent.

The '821 patent has two embodiments: a local embodiment on a stand-alone computer and an internet embodiment for a computer connected to a network. Defs.' Ex. A at col. 18:11-19:35. Only the internet embodiment is at issue in this suit.

Plaintiff alleges infringement of claims 1 and 2 of the '821 patent. Defs.' Ex. I. Claim 2 depends from claim 1. Each Defendant allegedly infringes claims 1 and 2 directly through its

---

[1] The claims against Defendants ValueClick, Inc. and PriceRunner Ltd. were dismissed with prejudice by stipulation in June, 2008 (Docket No. 107).

website or by contributing to or inducing infringement by others. Compl. ¶¶ 18-25, 33-41, 49-65 (Doc. No. 1); Defs.' Ex. I. The text of claims 1 and 2 of the '821 patent is as follows:

> 1. A method for assisting a user in identifying a subfamily of items within a family of items, comprising the steps of:
>
>    (a) providing a computer readable data file of stored information representing at least one family of items, said data file identifying at least one alternative for each item,
>
>    (b) reading said data file,
>
>    (c) displaying a feature screen indicating said alternatives represented in the family,
>
>    (d) accepting a first selection criteria of at least one alternative,
>
>    (e) determining a first subfamily of items wherein each said item in the first subfamily satisfies said first selection criteria,
>
>    (f) determining available alternatives represented in the first subfamily,
>
>    (g) revising said feature screen to indicate the available alternatives of the first subfamily,
>
>    (h) accepting a second selection criteria comprising the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen,
>
>    (i) determining a second subfamily of items of the family wherein each item in the second subfamily satisfies said second selection criteria,
>
>    (j) determining available alternatives represented in the second subfamily, and
>
>    (k) revising said feature screen to indicate the available alternatives of the second subfamily.
>
> 2. The method of claim 1 wherein each family has at least one feature associated therewith and further comprising the step of
>    displaying at least one grouping wherein each said grouping comprises one of said features visually related to respective alternatives.

3

Defs.' Ex. A.

In March, 1992, Danish's company, Danish International, prepared and sent a proposal to AMP Incorporated, a company which had previously accepted a proposal for work from Danish International. Defs.' Ex. S; Pl.'s Ex. K (Doc. No. 218); Defs.' Ex. G (Danish Dep. at 141:6-14, 143:9-20). The proposal described the development of a "navigation tool which allows users to locate AMP part numbers," called the "Navigator." Defs.' Ex. S at TWC001564. The AMP proposal described a project with five phases and included prices for phase one and estimated costs for phases two through five. Id. at TWC001567-68. Phase three was estimated at $200,000, and was described as providing a navigation system with

> [t]he ability to locate a part number by selecting product features in any order. Each time a feature is selected, the list of other selectable features is narrowed down to reflect only those remaining selectable features.

Id. at TWC001566, TWC001568. Phase three also referred to a "demo" of a navigation system "available at Danish International." Id. at TWC001566. A Danish International memorandum to AMP dated April 22, 1992 provided instructions for installing, running and using the demo. Id. at TWC001572. AMP did not accept the Navigator proposal.

According to Danish's sworn affidavit before the U.S. Patent and Trademark Office (PTO) on February 12, 1997, the idea for the '821 patent was conceived before November 23, 1992. Danish Aff. ¶ 8 (Defs.' Ex. D). "Shortly after conceiving the idea," Danish and Kimbrough "implemented a demonstration" of the idea through the

4

1  Navigator demo.  <u>Id</u>. at ¶¶ 9-10.  "At least Claim 1 as filed in the
2  present patent application is supported by the demonstration
3  described" in Danish's memorandum to AMP providing instructions on
4  the Navigator demo.  <u>Id</u>. at ¶ 10; Pl.'s Ex. D at PR0000260-61 (Doc.
5  No. 218).  Danish testified in his January, 2009 deposition that
6  claims 1 and 2 of the '821 patent were reduced to practice in
7  April, 1992 in this Navigator demo.  Danish Dep. at 143:9-144:2
8  (Defs.' Ex. G).  The demo was a local embodiment, and it was not a
9  useable product.  <u>Id</u>. at 143:13-20.  In its interrogatory
10 responses, Plaintiff likewise stated that claims 1 and 2 of the
11 '821 patent were reduced to practice in April, 1992.  Defs.' Ex. F
12 at 2-3.  The internet embodiment was reduced to practice between
13 August and October, 1994.  Danish Aff. ¶ 19 (Defs.' Ex. D).

14      Plaintiff originally filed this action in the Eastern District
15 of Texas in October, 2007 and it was transferred to this Court in
16 February, 2009.

LEGAL STANDARD

18      Summary judgment is properly granted when no genuine and
19 disputed issues of material fact remain, and when, viewing the
20 evidence most favorably to the non-moving party, the movant is
21 clearly entitled to prevail as a matter of law.  Fed. R. Civ.
22 P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986);
23 <u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir.
24 1987).

25      The moving party bears the burden of showing that there is no
26 material factual dispute.  Therefore, the court must regard as true
27 the opposing party's evidence, if supported by affidavits or other

5

evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Bhan v.

NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id. at 1103.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. at 1102-1103. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party must set

7

forth specific facts controverting the moving party's prima facie case. UA Local 343, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." Id. This standard does not change merely because resolution of the relevant issue is "highly fact specific." See id.

DISCUSSION

I. On-Sale Bar

A patent is invalid pursuant to 35 U.S.C. § 102(b) "if the claimed invention is offered for sale more than one year before the filing date of the patent application." Scaltech, Inc. v. Retec/Tetra, LLC, 269 F.3d 1321, 1325 (Fed. Cir. 2001). Here, the "critical date" is October 14, 1993, which is one year before the filing date of the '821 patent application.

Under this statutory bar, a patent is invalid pursuant to 35 U.S.C. § 102(b) if the invention is both: (1) the subject of a commercial offer for sale in the United States more than one year prior to the date of the patent application; and (2) ready for patenting at the time of the offer. Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67 (1998).

A. Commercial Offer For Sale

In order for the on-sale bar to apply where, as here, no actual sale was consummated prior to the critical date, a defendant must demonstrate, by clear and convincing evidence, activity that rises to the level of a formal offer under general principles of contract law. Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1045-47 (Fed. Cir. 2001). Plaintiff argues that the AMP

8

1 proposal did not constitute such an offer.

2 What constitutes an offer will depend on the facts of the
3 particular case. In determining whether an offer has been made,
4 courts may look to interpretive principles contained in the Uniform
5 Commercial Code (UCC) and the Restatement of Contracts. See
6 Group One, 254 F.3d at 1047-48. The Restatement defines an offer
7 as "the manifestation of willingness to enter into a bargain, so
8 made as to justify another person in understanding that his assent
9 to that bargain is invited and will conclude it." Restatement
10 (Second) of Contracts § 24.

11 Here, the AMP proposal was a formal, written proposal that
12 described the Navigator project in five phases, identifying the
13 work to be performed in each phase. Defs.' Ex. S at TWC001563-68.
14 Danish initially sent the proposal to AMP on March 5, 1992 and a
15 second time at AMP's request on March 24, 1992. Id. at TWC001563,
16 TWC001571. The proposal referred to a demo of phase three and
17 Danish sent a memorandum to AMP in April, 1992 providing
18 instructions for installing, running and using the demo. Id. at
19 TWC001566, TWC001572. Danish testified that claims 1 and 2 of the
20 '821 patent were reduced to practice in April, 1992 in this
21 Navigator demo. Danish Dep. at 143:9-144:2 (Defs.' Ex. G). The
22 AMP proposal also included a price and time-line for completion of
23 the first phase and estimated costs for phases two through five,
24 broken out by development and data entry. Defs.' Ex. S at
25 TWC001567-68. Phase three was estimated at $200,000 and Danish
26 testified that he believed that each phase of the AMP proposal was
27 offered at a fair price. Id. at TWC001568; Danish Dep. at 142:1-15

9

(Defs.' Ex. G).

Under these facts, a commercial offer for sale of the patented invention was made. Danish International's willingness to enter into a bargain with AMP is clear and AMP could have accepted the proposal. The parties' past dealings also support a finding of a commercial offer. In the past, AMP had accepted a proposal from Danish International for another fixed fee project. Danish Dep. at 22:22-23:24 (Defs.' Ex. G). The fact that certain terms were not finalized does not preclude finding that an offer was made. The UCC specifically states that a contract for sale may be formed even though multiple terms, including the price term, are left open. U.C.C. §§ 2-204, 2-305. The fact that AMP did not accept the proposal likewise does not prevent a finding that a commercial offer for sale was made. See Scaltech, 269 F.3d at 1328-29 (finding two proposals constituted a commercial offer for sale though the proposals were not accepted).

Plaintiff argues that the AMP proposal was not a commercial offer, but part of the patentee's experimentation, which negates the application of the on-sale bar. See EZ Dock v. Schafer Systems, Inc., 276 F.3d 1347, 1351-52 (Fed. Cir. 2002). However, because experimental use cannot preclude the on-sale bar after a reduction to practice and Plaintiff concedes that the invention here was reduced to practice, Plaintiff cannot claim experimental use. See In re Cygnus Telecommunications Tech., LLC, Patent Litigation, 536 F.3d 1343, 1356 (Fed. Cir. 2008).

B.  Ready For Patenting

The second Pfaff element that the invention be "ready for

10

patenting" at the time of the offer requires the defendant to prove that (1) the invention was reduced to practice; or (2) the inventor prepared drawings or descriptions sufficiently specific to enable someone skilled in the art to practice the invention. Pfaff, 525 U.S. at 67-68.  Pfaff does not require that an invention be reduced to practice in order to be complete and ready for patenting. Id. at 66.  It requires only that the concept of the invention be complete. Id. at 60-61, 66.

As noted above, Danish, a co-inventor of the '821 patent, and Plaintiff have conceded that claims 1 and 2 were reduced to practice in April, 1992.  Danish Dep. at 143:9-144:2 (Defs.' Ex. G); Defs.' Ex. F at 2-3; Danish Aff. ¶¶ 8-10 (Defs.' Ex. D).  In his sworn affidavit before the PTO, Danish stated, "At least Claim 1 as filed in the present patent application is supported by the demonstration" provided to AMP.  Danish Aff. ¶¶ 8-10 (Defs.' Ex. D).  Danish also testified that claims 1 and 2 of the '821 patent were reduced to practice in April, 1992 in the Navigator demo. Danish Dep. at 143:9-144:2 (Defs.' Ex. G).  In its interrogatory responses, Plaintiff admitted that claims 1 and 2 of the '821 patent were reduced to practice in April, 1992.  Defs.' Ex. F at 2-3.

Plaintiff does not respond to Defendants' argument, explain its admissions or even provide a reason for its inconsistent positions.  Instead, Plaintiff repeats that the demo was part of the patentees' testing and development and argues that therefore the invention was not ready for patenting.  Plaintiff has not provided sufficient evidence to "undermine the force of [Danish's]

11

sworn admission," Danish's deposition testimony and Plaintiff's interrogatory responses regarding the date of the invention's reduction to practice. See Cygnus Telecommunications, 536 F.3d at 1353-54. The admissions of Danish and Plaintiff are supported by the AMP proposal, Danish's memorandum to AMP describing the demo and the screen shots of the demo.

Plaintiff next argues that it could not have reduced the invention to practice in April, 1992 before it even conceived of the internet embodiment, which Plaintiff alleges occurred in April, 1994. Plaintiff contends that, because the demo was a local embodiment and not the internet embodiment, the invention was not reduced to practice. The Federal Circuit has held that it is "not necessary for [a defendant] to show that all embodiments of the invention were on sale more than one year before filing. It is sufficient to show that one embodiment of the invention was offered for sale during the one-year period." Scaltech, 269 F.3d at 1330. The local and internet embodiments of the '821 patent share the same underlying concept. The fact that the inventors did not fully understand the "full potential" of their invention or still needed to work on the internet embodiment does not preclude a finding that the invention was reduced to practice. See id. at 1331.

Finally, Plaintiff contended during oral argument that step (h) of claim 1 is missing from the demo and referred the Court to the declaration of its expert, J. Tipton Cole. See Cole Dec. (Pl.'s Ex. H)(Doc. No. 218). The Cole declaration merely states, "The example screens do not show element (h) of claim 1, in which the initial selection criteria are supplemented with additional

12

criteria to create a 'second selection criteria.'" Id. at ¶ 7. Cole is correct that the demo snapshots included in Defendants' motion do not show step 1(h)'s second selection criteria. Defs.' Mot. 3-5. Defendants' Exhibit E, however, does include demo snapshots showing step 1(h). Defs.' Ex. E. Defendants also submitted CDs containing a copy of the actual demo program. Defs. Exs. Q & R (Doc. Nos. 228 & 229). The demo program recreates the snapshots provided in Defendants' Exhibit E, including step 1(h). Plaintiff's contention therefore fails.

The Court concludes that claims 1 and 2 of the '821 patent are invalid due to the on-sale bar because they were the subject of a commercial offer for sale of an invention that was reduced to practice before October 14, 1993. The Court grants Defendants' motion for summary judgment of invalidity.

II. Infringement

Because the Court finds that the patent is invalid, it need not rule on the question of infringement. Although Cardinal Chemical Co. v. Morton International, Inc., 508 U.S. 83 (1993), held that a determination of non-infringement does not moot the question of validity, the rationale underlying Cardinal does not support the reverse proposition.

III. Defendants' Objections To Plaintiff's Expert Declaration

Defendants object to the declaration of Plaintiff's expert, J. Tipton Cole, under Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 56(e) as improperly providing conclusory opinions without identifying specific facts. Cole Dec. (Pl.'s Ex. H) (Doc. No. 218). Because the Court does not find support for Plaintiff's

13

position in the Cole declaration, the Court overrules Defendants' objections, and gives the Cole declaration the weight it deserves, finding in Defendants' favor notwithstanding.

CONCLUSION

For the foregoing reasons, Defendants' summary judgment motion is GRANTED.

IT IS SO ORDERED.

Dated: 8/21/09

CLAUDIA WILKEN
United States District Judge

14